IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

HCR, INC., an Oklahoma )
corporation, )
 )
      Plaintiff, )
 )
v. ) Case No. CIV-10-323-KEW
 )
KATHLEEN SEBELIUS, Secretary )
of United States Department )
of Health and Human Services, )
 )
      Defendant. )

## OPINION AND ORDER

This matter comes before this Court on Plaintiff's Motion for Summary Judgment (Docket Entry #18). Plaintiff HCR, Inc. ("HCR") is a Medicare certified hospice provider located in Ada, Oklahoma. HCR provides hospice services to eligible Medicare patients and receives reimbursements from The Center for Medicare and Medicaid Services ("CMS") through Palmetto GBA, a qualified financial intermediary for CMS. CMS administers the Medicare program established under the Medicare Act.

For the fiscal year from November 1, 2007 through October 31, 2008, the cap amount set for reimbursement for each beneficiary was set by CMS at $22,386.15. For the fiscal year ending October 31, 2008, HCR served patients first admitted in the fiscal year ending October 31, 2007. CMS paid HCR for the services rendered in fiscal year 2008, but because of the cap regulation which traps cap benefits in prior years, HCR received no cap allocation for these carry over patients in fiscal year 2008.

By letter dated February 16, 2010, CMS demanded repayment from HCR in the amount of $544,556.00 based upon Palmetto GBA's calculations of the cap as applied to HCR for fiscal year 2008. The letter informed HCR that CMS and Palmetto GBA utilized the regulation found at 42 C.F.R. § 418.309 to calculate the cap amount.

On April 12, 2010, HCR filed an appeal of the cap determination with the Provider Reimbursement Review Board ("PRRB"). HCR challenged the calculation of the cap for the fiscal year 2008 and the validity of the federal regulation used to calculate the cap. HCR requested expedited judicial review, contending the PRRB lacked the authority to assess the validity of the regulation.

On April 16, 2010, the PRRB requested additional information from HCR in order to ascertain that a minimum of $10,000.00 was in controversy so that the PRRB could establish jurisdiction in accordance with 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1835(a)(2).

On May 13, 2010, HCR delivered its Response to Request for Further Information to the PRRB. HCR included its calculation of the cap in accordance with the federal statute at 42 U.S.C. § 1395f(i)(2)(C) rather than the regulation utilized by CMS. HCR's alternative calculation contained the same patient by patient breakdown for the fiscal year 2008 with services provided in fiscal

year 2007 and 2009 reduced form the cap amount to those amounts previously trapped in 2007 being properly allocated to the dates of service in 2008. The recalculation reduced the cap from $544,556.00 to $416,636.37 or a reduction of $127,919.63. This demonstrated the PRRB's jurisdiction as the amount in dispute exceeded $10,000.00.

On May 26, 2010, the PRRB granted HCR's expedited judicial review request, finding that it properly exercised jurisdiction and lacked the authority to invalidate the federal regulation found at 42 C.F.R. § 418.309(b)(1). On June 21, 2010, the Administrator of CMS, on its own motion, determined to review the PRRB's decision and requested comments. Counsel for Palmetto GBA and counsel for HCR submitted comments as solicited by the Administrator. On July 28, 2010, the Administrator affirmed the PRRB's decision and granted expedited judicial review fo HCR's appeal.

Currently, HCR is on a repayment schedule to CMS for the entire amount of $544,556.00 plus interest.

On September 2, 2010, HCR initiated this action, contending the regulation upon which CMS imposed a cap upon Medicare reimbursements for hospice care were invalid in light of Congressional enactments which stated an intent that no such cap exist for such reimbursements. Through the subject Motion, HCR seeks summary judgment finding (1) the regulation upon which CMS based its calculation is invalid as it contradicts the

Congressional mandate set forth by statute and vacate the regulation; (2) set aside CMS's prior calculation of HCR's cap and reimbursement liability under that calculation; (3) prospectively enjoin the regulation's use against HCR; (4) apply all payments of principal and interest previously made by HCR to CMS to the re-calculated amount for the fiscal year ending October 31, 2008; (5) enjoin and invalidate any interest charges incurred by HCR or charged by Defendant on the reimbursement amount until after a Re-calculated Demand for Reimbursement is delivered to HCR; and (6) order an award of attorney's fees and costs to HCR.

For its part, Defendant contends she reasonably interpreted the hospice cap statute in the formulation of the regulation at issue in light of the use of ambiguous language in the applicable statute. Defendant also asserts the ruling that the regulation is invalid from another judge in this District is of limited precedential value since his jurisdiction was limited due to the lack of exhaustion of the administrative review process in his case. As a final matter, Defendant states that this Court's jurisdiction is limited to ordering relief for the fiscal year 2008 only, also due to the exhaustion requirement.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Although Defendant did not expressly state whether she contested any of the material, undisputed facts set forth in HCR's Motion, the facts Defendant recites in her brief are largely the same but not as extensive as those set out by HCR. Accordingly, this Court concludes the material facts as established by this Court herein are undisputed for purposes of considering summary judgment under the prevailing legal authorities.

Judicial review of Medicare reimbursement disputes are governed by the Administrative Procedures Act ("APA"). 42 U.S.C. § 1395oo(f)(1). Generally, Defendant's interpretation of the regulations of the agency is entitled to "substantial deference" and "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994). In evaluating an agency's construction of a statute, however, the court must examine (1) "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the Court, as well as the agency, must give effect to the unambiguously expressed intent of Congress" and (2) if the statute is either silent or not clear on the issue addressed by regulation, the court must determine "whether the agency's answer is based on a permissible construction of the statute." <u>Chevron, U.S.A., Inc. v. NRDC, Inc., et al.</u>, 467 U.S. 837, 842-43 (1984).

The interplay between the statute and the challenged regulation in this case is paramount to answering whether the agency has overstepped the limitations on its regulation making power and invaded the province of Congress. The statute under which calculation of payments to HCR under the hospice program was made is found at 42 U.S.C. § 1395f(i)(2)(A), which provides:

> The amount of payment made under this part for hospice care provided by (or under arrangement made by) a hospice program for an accounting year may not exceed the "cap amount" for the year (computed under subparagraph (B))

multiplied by the number of medicare beneficiaries in the hospice program in that year (determined under subparagraph (C)).

As suggested by subparagraph A of this statute, the method of calculating the number of medicare beneficiaries is addressed in a subparagraph C, which provides:

> For purposes of subparagraph (A), the "number of Medicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements by) the hospice program under this part in the accounting year, **such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year** or under a plan of care established by another hospice program.
>
> 42 U.S.C. § 1395f(i)(2)(C) (emphasis added by this Court).

In response to this legislation, the Department of Health and Human Services adopted regulations for calculating the cap. The regulation states:

> Each hospice's cap amount is calculated by the intermediary by multiplying the adjusted cap amount determined in paragraph (a) of this section by the number of Medicare beneficiaries who elected to receive hospice care from that hospice during the cap period. For purposes of this calculation, the number of Medicare beneficiaries includes –
>
> (1) Those Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care, in accordance with § 418.24 from the hospice during the period beginning September 28 (35 days from the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).

>       (2)   IN the case in which a beneficiary has elected
>             to receive care from more than one hospice,
>             each hospice includes in its number of
>             Medicare beneficiaries only that fraction
>             which represent the portion of a patient's
>             total stay in all hospices that was spent in
>             that hospice. . . .

42 C.F.R. § 418.309(b).

Disturbingly, CMS appears to have been aware that its regulations were contrary to the Congressional mandate when it found

> Although . . . the Act specifies that the cap amount is
> to be adjusted "to reflect the proportion of the hospice
> care that each such individual was provided in a previous
> or subsequent accounting year. . .' **such an adjustment
> would be difficult** in that the proportion of the hospice
> stay occurring in any given year would not be known until
> the patient dies or exhausted his or her hospice
> benefits.  We believe the proposed alternative of
> counting the beneficiary in the reporting period where
> the beneficiary used most of the days of covered hospice
> care will achieve the intent of the statute without being
> burdensome.

48 Fed. Rec. 38,146 at 38,158.

Under the <u>Chevron</u> analysis, this Court expressly finds that Congress has spoken directly on this issue and stated unequivocally its intent in the language it employed in § 1395f(i)(2)(C). The statute requires a strict proportional calculation for which Defendant proposed an alternative and, thus, not the method required by Congress. With Congressional intent so explicitly and clearly set out in the language of the statute, "that is the end of the matter" so far as the <u>Chevron</u> analysis for evaluating

Defendant's administrative decision.

Defendant urges that Congress' use of the term "reflect" in the statute creates ambiguity in the intent for the proportional calculation. Defendant attempts to create ambiguity where precision exists. The statute provides that the calculation will reflect the proportion of care each such individual was provided for each year. Defendant has regulated directly contrary to the meaning of the statute by limiting the calculation to one fiscal year. Defendant argues the "administrative problems" avoided by the method of calculation provided in the regulation justifies its use as well as the burden upon the Medicare program if the calculation is required to be made in accordance with the statute. Ease of administration can never be a justification for thwarting the express will of Congress. Defendant's regulation does not comply with the statute passed by Congress and is, therefore, invalid.

Defendant does not challenge the relief sought by HCR except to the extent that it requests that if the regulation is found to be invalid, the only fiscal year which should be affected is 2008. HCR does not challenge this limitation in its reply. This Court is mindful of the recent case of Lion Health Servs. v. Sebelius, 635 F.3d 693 (5th Cir. 2011) in which the court determined that the district court should have remanded the case back to the agency for calculation of the refund amount. In this case, Defendant has not

challenged HCR's calculation of the proper refund amount through the summary judgment process. While this Court is hesitant to begin the administrative process all over again and the inherent and unwieldy delays that this entails, the more appropriate avenue to establish the amount of the reimbursement is to remand the matter to Defendant and CMS for a re-calculation of the amount under the statute rather than the regulation. As for HCR's request for attorney's fees and costs, it will be required to file a separate motion seeking this relief rather than award fees and costs as a component of summary judgment.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Docket Entry #18) is hereby **GRANTED** for the reasons set forth herein. Accordingly, this Court specifically finds that:

1) the regulation found at 42 C.F.R. § 418.309(b) is hereby deemed **INVALID** on its face and of no effect;

2) Defendant's calculation of HCR's cap and reimbursement liability made for the fiscal year ending October 31, 2008 is hereby **VACATED**;

3) the matter is hereby **REMANDED** to Defendant and CMS for the purpose of recalculating the reimbursement amount and issuing a new Demand for Reimbursement to HCR in accordance with the statute's proportional calculation. In no event, however, shall the amount assessed exceed HCR's calculation of $416,636.37 plus interest since Defendant did not object to that amount in the summary judgment process;

4) Defendant is hereby permanently **ENJOINED** from enforcing the application of 42 C.F.R. § 418.309(b) against HCR, Inc. at any time in the future;

5) Defendant is **ENJOINED** from charging interest on the

reimbursement amount until such time as Defendant issues a new Demand for Reimbursement;

6) all payments made by HCR under the invalid calculation shall be applied to the new calculation; and

7) should HCR wish to seek attorney's fees and costs, it shall file an appropriate but separate motion seeking that relief.

IT IS SO ORDERED this 29th day of September, 2011.

*/s/ Kimberly E. West*
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE